**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| WOODROW R. COX III, KIMBERLY J. COX, and MAKINSEY L. FORTENBURY, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ACCREDITED COLLECTION SERVICE, INC.; BQ & ASSOCIATES, P.C., L.L.O.; and NEBRASKA MEDICINE,<br><br>Defendants. | Case No.<br><br>CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL |

Plaintiffs Woodrow R. Cox III and Kimberly J. Cox (*the Coxes*) and Makinsey L. Fortenbury (*Fortenbury*), individually and on behalf of all others similarly situated, by and through undersigned counsel, for their Class Action Complaint against Defendants Accredited Collection Service, Inc. (*Accredited*), BQ & Associates, P.C., L.L.O. (*BQ*), and Nebraska Medicine (*Nebraska Medicine*), allege as follows:

## NATURE OF THE ACTION

1. This is a class action arising from a system for collecting medical debts that routinely takes more than the law allows, that turns patients' own medical and payroll records into the instruments of their garnishment, and that pursues married couples for joint liability without the prerequisites Nebraska law requires.

2. The gravamen is concrete and documentary. After the District Court of Douglas County entered its July 31, 2024 order splitting the underlying judgment and fixing Kimberly Cox's individual liability at $1,742.23, and after the mandate issued, BQ filed a sworn affidavit representing that Kimberly Cox owed $3,527.16 in principal plus $511.00 in interest, a total of $4,137.26, roughly double her judgment, and Accredited then garnished her wages on that basis and collected sums exceeding what she owed. The Eighth Circuit has held that *a false representation of the amount of a debt that overstates what is owed under state law materially violates 15 U.S.C. § 1692e(2)(A)*, and that an attempt to collect a debt not owed materially violates § 1692f(1). *Coyne v. Midland Funding LLC*, 895 F.3d 1035, 1038 (8th Cir. 2018). This action begins there.

3. Plaintiffs do not ask this Court to review or set aside the judgment in the underlying collection action. Their claims arise from Defendants' conduct, post-judgment collection that exceeds the judgment, disclosure and misuse of confidential records, and the pursuit of joint liability without statutory predicate, not from the judgment itself.

4. The conduct alleged here is not unique to the Coxes. It is produced by standardized practices that Accredited and BQ apply across hundreds or thousands of consumer medical-debt collections in Nebraska, which is why Plaintiffs bring the claims on behalf of the Classes defined below.

5. Those same practices reached Makinsey L. Fortenbury, sued on a chargemaster-derived medical debt that no fact-finder has found reasonable and against whom Defendants sought a default. Because no final judgment has been entered against her, she brings the reasonable-value and default-practice claims that the standardized system produces.

## PARTIES

6. Plaintiff Woodrow R. Cox III is a natural person residing in Douglas County, Nebraska, and a consumer as defined by 15 U.S.C. § 1692a(3).

7. Plaintiff Kimberly J. Cox is a natural person residing in Douglas County, Nebraska, and a consumer as defined by 15 U.S.C. § 1692a(3). She is or was an employee of Nebraska Medicine, and her wages were garnished by Accredited at her place of employment, Nebraska Medicine itself.

8. Plaintiff Makinsey L. Fortenbury is a natural person residing in Sarpy County, Nebraska, and a consumer as defined by 15 U.S.C. § 1692a(3). She was the subject of a collection action by Accredited, through BQ, on an alleged medical debt originating with Nebraska Medicine and an affiliated provider.

9. Defendant Accredited Collection Service, Inc. is a Nebraska corporation with its principal place of business in Omaha, Douglas County, Nebraska. Accredited is a debt collector as defined by 15 U.S.C. § 1692a(6) and regularly collects medical debts owed or alleged to be owed to Nebraska Medicine and other providers throughout Nebraska.

10. Defendant BQ & Associates, P.C., L.L.O. is a Nebraska professional corporation with its principal place of business at 14211 Arbor Street, Suite 100, Omaha, Nebraska 68144, that serves as Accredited's litigation counsel for the collection of consumer debts. BQ is a debt collector as defined by 15 U.S.C. § 1692a(6) because it regularly engages in activity the principal purpose of which is the collection of debts. BQ files collection complaints, swears garnishment affidavits, and files records on public court dockets in connection with the collection of consumer debts on Accredited's behalf.

11. Defendant Nebraska Medicine is a Nebraska nonprofit corporation headquartered in Omaha, Douglas County, Nebraska. It is a healthcare provider, an employer of thousands of Nebraskans, and a creditor whose medical accounts are placed with Accredited for collection. It is a covered entity as defined by 45 C.F.R. § 160.103. Plaintiffs assert no FDCPA claim against Nebraska Medicine. The claims against it are state-law claims for breach of the duty of confidentiality, invasion of privacy, and civil conspiracy arising from its dual role as provider and employer and its disclosure of confidential patient and employment information to Accredited for use in collection.

## JURISDICTION AND VENUE

12. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 over the FDCPA claims, 15 U.S.C. § 1692 et seq.

13. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over the Nebraska statutory and common-law claims, which arise from the same case or controversy.

14. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this District.

16. Venue is also proper because all Defendants named above reside in this District.

## FACTUAL ALLEGATIONS

### *A. The Underlying Judgment*

16. In or about May 2022, Accredited, through BQ, filed a collection action against both Coxes in the County Court of Douglas County, Nebraska, Case No. CI 22-9353, on an alleged medical debt originating with Nebraska Medicine and Radiologic Center III, in the combined amount of $3,734.14.

17. The County Court entered summary judgment against both Coxes, jointly and severally, for $3,734.14.

18. On appeal, the District Court of Douglas County set aside joint and several liability under Neb. Rev. Stat. § 42-201 and split the judgment, fixing $1,991.91 against Woodrow R. Cox III and $1,742.23 against Kimberly J. Cox. The County Court mandate thereafter issued, and the operative, final adjudication of Kimberly Cox's individual liability became $1,742.23.

### *B. The False Garnishment Affidavit and Over-Collection*

19. After the mandate, BQ filed in CI 22-9353 a sworn Affidavit and Praecipe for Summons in Garnishment After Judgment representing that Kimberly Cox

owed $3,527.16 in principal, plus $511.00 in interest, for a total of $4,137.26, and identifying her as the sole judgment debtor.

20. That representation was false. The $3,527.16 figure is the combined total of both Coxes' separate split judgments, sworn against Kimberly Cox alone. Her individual judgment was $1,742.23. The affidavit thus overstated her principal by $1,784.93 and sought $511.00 in interest not authorized by any agreement between the Coxes and the creditor.

21. On or about July 1, 2025, as directed by Defendant Accredited, a Summons and Order of Garnishment issued, directed to Nebraska Medicine as garnishee, commanding garnishment of $4,137.26 from Kimberly Cox.

22. Kimberly Cox's wages were thereafter garnished and withheld on the basis of the false affidavit, and sums were taken from her in excess of her $1,742.23 judgment. The total garnished and the amount collected in excess of her judgment are established by the garnishment returns and Nebraska Medicine's payroll records and will be proven at trial.

23. No attorney or other qualified person verified the current state of the judgment against the appellate mandate before the affidavit was sworn. The misstatement is the product of a practice of swearing garnishment affidavits from form templates without checking the controlling judgment.

### *C. Nebraska Medicine's Disclosure of Confidential Information*

24. The July 1, 2025 garnishment summons prepared by Accredited and BQ identified the garnishee as "NEBRASKA MEDICINE; 988149 NE MED CNTR

A:PYRL," a designation that includes Nebraska Medicine's specific internal payroll routing identifier, which is not publicly available.

25. The docket in CI 22-9353 reflects no post-judgment discovery: no debtor's examination under Neb. Rev. Stat. § 25-1564, no post-judgment interrogatories, and no subpoena to any employer. Accredited and BQ nonetheless directed garnishment to Kimberly Cox's specific employer payroll unit using that internal code.

26. On information and belief, the only source of that information was Nebraska Medicine. Nebraska Medicine knew Kimberly Cox was its employee from its payroll records and knew she carried an alleged medical debt from its patient-billing records. To identify her as a garnishment target, Nebraska Medicine cross-referenced its patient-billing database against its payroll database and disclosed her employment status and internal payroll routing identifier to Accredited.

27. That cross-referencing necessarily used protected health information, the existence and identity of a patient debt, for a purpose that serves no treatment, payment, or healthcare-operations function within 45 C.F.R. § 164.506 and exceeds the minimum-necessary standard of 45 C.F.R. § 164.502(b).

28. Nebraska Medicine also furnished Accredited with Plaintiffs' detailed medical billing records, including specific procedures, dates of service, patient identification numbers, insurer identity and payment amounts, and account

numbers, without adequate restriction on Accredited's further handling or public filing of that information.

### *D. The Improper Joint-Liability Practice*

29. The complaint in CI 22-9353 sought joint and several liability against both Coxes for medical debts by invoking the common-law doctrine of necessaries, without any allegation that a judgment had first been obtained against the patient-spouse and that execution had been returned unsatisfied, as Neb. Rev. Stat. § 42-201 requires before the non-patient spouse's property may be reached.

30. The District Court of Douglas County held on appeal that the pursuit of joint and several liability on this theory was improper, and split the judgment accordingly. The statutory prerequisite is a condition precedent: a married woman's property becomes liable for the family's necessaries only "after execution against the husband for such indebtedness has been returned unsatisfied." Neb. Rev. Stat. § 42-201; *Schmuecker Bros. Implement Co.* v. Sobotka, 348 N.W.2d 130, 133 (Neb. 1984) (wife becomes liable only after judgment against the husband and execution returned unsatisfied).

31. On information and belief, Accredited and BQ name both spouses and seek joint and several liability at the outset, without satisfying the § 42-201 prerequisites, as a standardized practice across their married-couple medical-debt collections.

### *E. The Fortenbury Collection Action*

32. Accredited, through BQ, sued Makinsey L. Fortenbury in the County Court of Sarpy County, Nebraska, Case No. CI 25-5081, on an alleged medical debt of $2,537.64 originating with Nebraska Medicine and Radiologic Center III, the same originating providers whose accounts gave rise to the action against the Coxes.

33. The Fortenbury complaint sought a chargemaster-derived amount without any itemization of services and without any showing that the amount represents the reasonable value of the services rendered. Fortenbury has appeared and contested the action, denying the debt and putting the reasonableness of the charges, the validity of the assignment, and Accredited's standing at issue.

34. Before Fortenbury appeared, Defendants sought to obtain a default against her No final judgment has been entered against Fortenbury, and her challenge to the reasonable value of the charges has never been adjudicated, so her claims are not barred by any prior judgment.

### *F. The Practices Are Systemic*

35. The conduct described above is generated by standardized, high-volume practices. On information and belief, Accredited and BQ file collection complaints and garnishment affidavits from fixed form templates, swear garnishment affidavits without verifying the controlling judgment, and use patient-derived employment information to locate and garnish debtors, across hundreds or thousands of Nebraska consumer cases.

36. BQ's own public marketing confirms that it operates as a high-volume collection enterprise. BQ advertises a "state-of-the-art automatic phone dialer system, which allows for a high volume of telephone activity," "collection software" that lets it "accept claims in any selected delivery method, including manual, electronic, or through our software," and "skip tracing and asset identification," and states that it is "fully equipped with paraprofessionals and computer technology" and "designed and staffed to handle bulk consumer and commercial collections," "focusing on the efficient and aggressive pursuit of maximum liquidation of accounts."

37. On information and belief, BQ is not licensed as a collection agency under the Nebraska Collection Agency Act, Neb. Rev. Stat. §§ 45-601 to 45-622, and claims the exemption in § 45-602(2)(i) for attorneys "handling claims and collections in their own names and not operating a collection agency under the management of a layperson." The software-driven, paraprofessional-run operation BQ markets and the uniform form templates reflected in its filings are the operation of a collection agency, and the attorney signatures on those filings do not reflect meaningful, individualized attorney review.

38. By contrast, Accredited is a licensed collection agency (NMLS ID 1894201). On information and belief, Accredited routes its litigation-stage collection through BQ, obtaining the appearance of independent attorney review while the underlying work is performed through a collection-agency operation that is not

separately licensed, bonded, or subject to the oversight applicable to licensed agencies.

39. The pattern is documented in publicly available court records. In collection actions Accredited files through BQ, the employer and address information used for service repeatedly originates from stale patient-intake data rather than any current source, and when that data fails, BQ resorts to substitute service rather than locating the defendant, producing default judgments against consumers who never received notice.

40. In *Accredited Collection Service, Inc. v. Benes*, No. CI 25-32643 (Douglas County Court), BQ directed service to a Kiewit Corporation address that Kiewit had vacated years earlier, and the sheriff's return reported that Kiewit had not been in the building for years. A second attempt at another Kiewit facility drew word that the defendant worked at a different location, yet BQ proceeded to substitute service at a home address rather than serve him at his actual workplace. A current employment search would not return an address a major employer vacated years earlier; only a static record captured at an earlier medical visit would.

41. In *Accredited Collection Service, Inc. v. Rodheim,* No. CI 25-33454 (Douglas County Court), BQ directed service to a retail employer at a specific store address and named a contact person by first name, a level of detail consistent with patient-intake data and not with a routine skip trace. After service failed

at both the workplace and a stale home address, BQ obtained substitute service at the home, and Accredited later dismissed the action.

42. These records, available on the public dockets without discovery, corroborate that the employer information originated from records collected for treatment and billing, and document the resulting pattern of defective service and default across cases.

43. Because the violations arise from common, standardized practices rather than individualized conduct, they are common to the members of the Classes defined below and are appropriate for class treatment.

## CLASS ACTION ALLEGATIONS

44. Plaintiffs bring this action under Federal Rule of Civil Procedure 23(b)(3) on behalf of the following Classes:

45. **Class 1 (Overcollection Class):** All persons in Nebraska from whom, within the applicable limitations period, Accredited or BQ sought or collected through garnishment, execution, or other post-judgment process an amount exceeding the amount fixed by the controlling judgment, modified judgment, or appellate mandate, or interest not authorized by agreement or by law, including amounts sworn to in garnishment affidavits that misstated the judgment because the affiant did not verify the current state of the judgment before swearing it.

46. **Class 2 (Patient-Data Privacy and Garnishment Class):** All persons in Nebraska who are or were patients of Nebraska Medicine and who, within the

applicable limitations period, were located, served, or had wages garnished by Accredited or BQ at an employer or through payroll information identified by reference to Nebraska Medicine's patient intake, treatment, billing, or payroll records, where no debtor's examination, interrogatory in aid of execution, or other post-judgment discovery authorized by Nebraska law was used to obtain that information.

47. **Class 3 (Improper Joint Liability Class):** All married persons in Nebraska against whom, within the applicable limitations period, Accredited or BQ sought or obtained joint and several liability for a medical debt incurred individually by their spouse, without first obtaining a separate judgment against the patient-spouse and having execution on that judgment returned unsatisfied as required by Neb. Rev. Stat. § 42-201.

48. **Class 4 (Assembly-Line Default Class):** All persons in Nebraska against whom, within the applicable limitations period, Accredited or BQ obtained or sought a default judgment on an alleged medical debt through form-template complaints and conclusory affidavits and through service that did not afford actual notice, including substitute service obtained without a showing of reasonable diligence.

49. **Class 5 (Reasonable-Value Class):** All persons in Nebraska from whom, within the applicable limitations period, Accredited or BQ sought or collected an alleged medical debt in an amount derived from chargemaster pricing, less

any insurer-negotiated adjustment, where the reasonable value of the underlying services was never determined by any fact-finder.

50. Numerosity. On information and belief, each Class consists of hundreds or thousands of members, making joinder impracticable, given the high-volume, statewide nature of Accredited's and BQ's collection operation.

51. Commonality and Predominance. Common questions of law and fact predominate, including whether Defendants' standardized practices of swearing unverified garnishment affidavits, collecting amounts exceeding the controlling judgment, using patient-derived data to garnish, and pursuing joint liability without the § 42-201 prerequisites violate the FDCPA, the NCPA, and Nebraska common law.

52. Typicality. Plaintiffs' claims arise from the same standardized practices and legal theories as those of the Class members. Kimberly Cox is typical of Classes 1 and 2; the Coxes are typical of Class 3; and Fortenbury, against whom no final judgment has been entered, is typical of Classes 4 and 5.

53. Adequacy. Plaintiffs will fairly and adequately protect the Classes' interests, have no conflicts with absent members, and have retained counsel experienced in consumer-protection and class litigation.

54. Superiority. A class action is superior to other methods for fairly and efficiently adjudicating this controversy, given the modest individual recoveries and the common, standardized nature of the conduct.

## COUNT I

### Violation of FDCPA § 1692e(2)(A) — False Representation of the Amount of the Debt
### (Class 1, Against Accredited and BQ)

55. Plaintiffs incorporate the preceding paragraphs.

56. Section 1692e(2)(A) prohibits the false representation of the character, amount, or legal status of a debt. By swearing in the June 25, 2025 affidavit that Kimberly Cox owed $4,137.26 when her individual judgment was $1,742.23 and then subsequently utilizing that false declaration for collection purposes and by the standardized practice of swearing garnishment affidavits that overstate the controlling judgment and using them to garnish wages, Accredited and BQ falsely represented the amount of the debt. The overstatement is material. Coyne, 895 F.3d at 1038; Haney v. Portfolio Recovery Assocs., LLC, 837 F.3d 918, 931–32 (8th Cir. 2016); Hill v. Accounts Receivable Servs., LLC, 888 F.3d 343, 345–46 (8th Cir. 2018).

57. As a direct result, Kimberly Cox's wages were garnished and money was taken from her in excess of her judgment, and Class 1 members suffered like injuries.

## COUNT II

### Violation of FDCPA § 1692f(1) — Collection of Amounts Not Owed
### (Class 1, Against Accredited and BQ)

58. Plaintiffs incorporate the preceding paragraphs.

59. Section 1692f(1) prohibits the collection of any amount unless authorized by the agreement creating the debt or permitted by law. By collecting and seeking amounts exceeding the controlling judgment, and interest not authorized by any agreement, Accredited and BQ collected amounts neither authorized nor

permitted by law. An attempt to collect a debt not owed materially violates § 1692f(1). *Coyne*, 895 F.3d at 1038; *Demarais v. Gurstel Chargo, P.A.*, 869 F.3d 685, 699 (8th Cir. 2017).

**COUNT III**

**Violation of FDCPA §§ 1692e(2)(A), (5), (10) and 1692f(1) — Improper Joint-Liability Demands**
**(Class 3, Against Accredited and BQ)**

60. Plaintiffs incorporate the preceding paragraphs.

61. By naming both spouses and demanding joint and several liability for a medical debt incurred individually by one spouse and continuing to attempt to collect such joint and several liability with garnishment subpoenas issued after being ordered to split such judgments, without satisfying the prerequisites of Neb. Rev. Stat. § 42-201, Accredited and BQ falsely represented the legal status of the debt and the consumers' obligations, threatened action that cannot legally be taken, and used false and unfair means to collect, in violation of §§ 1692e(2)(A), (5), (10), and 1692f(1). Under § 42-201, the non-patient spouse's property becomes liable only after execution against the patient-spouse has been returned unsatisfied, a prerequisite Defendants did not satisfy. *Schmuecker Bros. Implement Co. v. Sobotka*, 348 N.W.2d 130, 133 (Neb. 1984).

**COUNT IV**

**Breach of the Duty of Confidentiality / Negligent Disclosure**
**(Class 2, Against Nebraska Medicine)**

62. Plaintiffs incorporate the preceding paragraphs.

63. Nebraska recognizes a healthcare provider's duty to hold confidential the information obtained in the patient relationship. *Simonsen v. Swenson*, 104 Neb. 224, 177 N.W. 831 (1920). HIPAA's Privacy Rule standards, including 45 C.F.R. §§ 164.502(b) and 164.506, inform the applicable standard of care, though they afford no private right of action

64. Nebraska Medicine breached that duty by cross-referencing its patient-billing records against its payroll records to identify Kimberly Cox as a garnishment target, by disclosing her employment status and internal payroll routing information to Accredited to facilitate garnishment, by transmitting patients' Social Security numbers, collected for treatment and billing, to Accredited for the secondary purpose of querying the Department of Defense's military-status database, a use outside the scope of any patient consent and outside HIPAA's payment exception, and by furnishing detailed medical billing records to Accredited without adequate restriction on further disclosure. These disclosures were not compelled by any subpoena or court order. As a direct and proximate result, Plaintiffs and Class 2 members suffered the garnishment those disclosures enabled and the exposure of their confidential information.

**COUNT V**

**Invasion of Privacy — Intrusion Upon Seclusion, Neb. Rev. Stat. § 20-203 (Class 2, Against Nebraska Medicine)**

65. Plaintiffs incorporate the preceding paragraphs.

66. Nebraska makes actionable an intentional interference with another's interest in solitude or seclusion as to private affairs, of a kind highly offensive to a

reasonable person. Neb. Rev. Stat. § 20-203. Nebraska Medicine intentionally accessed and combined Plaintiffs' private medical and payroll information for a purpose unrelated to their care or employment, to enable garnishment of their wages, an intrusion that would be highly offensive to a reasonable person Plaintiffs may recover general damages, damages for mental suffering, and special damages.

**COUNT VI**

**Violation of FDCPA § 1692f — Unfair or Unconscionable Means (Class 2, Against Accredited and BQ)**

67. Plaintiffs incorporate the preceding paragraphs.

68. Section 1692f prohibits the use of unfair or unconscionable means to collect a debt. Accredited and BQ used such means by:

(a) directing garnishment to consumers' employers using patient-derived employment and payroll information rather than any lawful post-judgment discovery;

(b) filing detailed medical billing records on public court dockets in connection with collection, when an account summary would suffice and confidentiality procedures were available without subsequently seeking to redact such information even under a standing demand to do so; and

(c) swearing garnishment affidavits from form templates without verifying the controlling judgment; and

(d) using consumers' full Social Security numbers, obtained from medical records, to query the Department of Defense's military-status database when less intrusive identifiers would accomplish the same verification.

**COUNT VII**
**Nebraska Civil Conspiracy**
**(Class 2, Against Accredited and Nebraska Medicine)**

69. Plaintiffs incorporate the preceding paragraphs.

70. Under Nebraska law, civil conspiracy is not an independent tort; it imposes joint and several liability on those who agree to the commission of an underlying tort. *George Clift Enters. v. Oshkosh Feedyard Corp.*, 306 Neb. 775, 947 N.W.2d 510 (2020); *Koster v. P & P Enters.,* Inc., 248 Neb. 759, 539 N.W.2d 274 (1995); *Salem Grain Co. v. Consolidated Grain & Barge Co.*, 297 Neb. 682, 900 N.W.2d 909 (2017); *Henderson State Co. v. Garrelts*, 319 Neb. 485, 23 N.W.3d 444 (2025).

71. The underlying tort is Nebraska Medicine's breach of the duty of confidentiality alleged in Count IV. Accredited and Nebraska Medicine, two separate entities, agreed to and acted in concert to identify Nebraska Medicine's patient-employees through cross-referenced records and to use that confidential information to garnish their wages. The agreement is shown by the routine transfer of patient-derived employment and payroll data from Nebraska Medicine to Accredited, the appearance of Nebraska Medicine's internal payroll routing code in the garnishment, and the absence of any lawful

post-judgment discovery by which Accredited could otherwise have obtained that information.

72. By virtue of the conspiracy, Accredited and Nebraska Medicine are jointly and severally liable for the harm caused by the underlying breach of confidentiality.

## COUNT VIII

### Violation of the Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59-1602

### (Classes 1 and 2, Against Accredited, BQ, and Nebraska Medicine)

73. Plaintiffs incorporate the preceding paragraphs.

74. The NCPA prohibits unfair or deceptive acts or practices in trade or commerce. Neb. Rev. Stat. § 59-1602. Swearing to overstated judgment balances, collecting amounts exceeding the controlling judgment, and using patients' confidential records to garnish them are unfair and deceptive practices.

75. These practices affect the public interest. On information and belief, they are standardized features of a high-volume collection operation applied across numerous Nebraska consumers, not a private dispute.

## COUNT IX

### Violation of FDCPA §§ 1692e(3), 1692e(10), and 1692f — Unlicensed Collection-Agency Operation and Absence of Meaningful Attorney Review

### (Classes 1–3, Against Accredited and BQ)

76. Plaintiffs incorporate the preceding paragraphs.

77. Section 1692e(3) prohibits the false representation or implication that a communication is from an attorney, and §§ 1692e(10) and 1692f prohibit false, deceptive, and unfair means of collection. An attorney's signature on a

collection filing implies that an attorney exercised meaningful, individualized professional judgment. *Clomon v. Jackson*, 988 F.2d 1314, 1320 (2d Cir. 1993); *Nielsen v. Dickerson*, 307 F.3d 623, 635–37 (7th Cir. 2002); *CFPB v. Frederick J. Hanna & Assocs.*, P.C., 114 F. Supp. 3d 1342, 1349–50 (N.D. Ga. 2015)

78. On information and belief, BQ's filings are generated through a form-template, software-driven, paraprofessional-run operation in which no meaningful, individualized attorney review occurs before signing, as BQ's own marketing and the uniformity of its filings reflect. The attorney signatures therefore carry a false implication of meaningful attorney involvement.

79. BQ's operation of an unlicensed collection agency, while claiming an attorney exemption for which it does not qualify, is a further unfair and deceptive means of collection. Plaintiffs assert no private right of action under the Nebraska Collection Agency Act, which provides none; they rely on the unlicensed operation only as evidence that the conduct is unfair under § 1692f and deceptive under § 1692e, and as an unfair or deceptive practice under the Nebraska Consumer Protection Act.

80. Accredited is liable for these practices under theories of joint enterprise and concert of action, and independently for using an unlicensed collection-agency operation to collect its debts. Unlike a bare procedural violation, Plaintiffs allege concrete monetary injury from the resulting collection, which supports standing.

## COUNT X

**Violation of FDCPA §§ 1692e(2)(A) and 1692f(1) and the Nebraska Consumer Protection Act — Collection of Amounts Exceeding Reasonable Value**

**(Class 5, Against Accredited and BQ)**

81. Plaintiffs incorporate the preceding paragraphs.

82. Under Nebraska law, the reasonable value of medical services is a question of fact, and an unpaid medical bill is not prima facie evidence of its own reasonableness; reasonableness must be established by proof beyond the bill itself.

83. Accredited and BQ sought and collected medical debts in amounts derived from chargemaster pricing that no payer actually pays and that has never been determined to represent the reasonable value of the services, treating those amounts as liquidated sums. By representing and collecting such amounts as the amount owed, they falsely represented the amount of the debt under § 1692e(2)(A), collected amounts not permitted by law under § 1692f(1), and engaged in unfair and deceptive practices under Neb. Rev. Stat. § 59-1602.

84. Fortenbury, against whom no judgment has been entered, is a representative of Class 5 whose challenge to the reasonable value of the charges remains live and unadjudicated.

## COUNT XI

**Violation of FDCPA §§ 1692e(10) and 1692f — Default Judgments Through Form Pleadings and Defective Service**

**(Class 4, Against Accredited and BQ)**

85. Plaintiffs incorporate the preceding paragraphs.

86. Accredited and BQ obtained or sought default judgments and subsequently collect on those judgments through form-template complaints and conclusory affidavits, and through service that did not afford actual notice, including substitute service obtained without a showing of reasonable diligence and at addresses derived from stale patient-intake records. These are false, deceptive, and unfair means of collection under §§ 1692e(10) and 1692f, because they produce judgments and post-judgment collection against consumers who never received notice and never had an opportunity to contest the debt or its amount.

87. A judgment entered without valid service is void for want of personal jurisdiction and may be set aside in the rendering court at any time. Plaintiffs do not ask this Court to vacate any state-court judgment; they seek redress for the collection conduct. Fortenbury, against whom Defendants sought a default before she appeared, is a representative of Class 4.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Classes, request that this Court:

(a) certify this action as a class action under Rule 23, appoint Plaintiffs as Class Representatives, and appoint undersigned counsel as Class Counsel;

(b) award actual damages, including all amounts garnished and collected in excess of the controlling judgments;

(c) award statutory damages under 15 U.S.C. § 1692k(a)(2), including the class recovery permitted by § 1692k(a)(2)(B);

(d) award compensatory damages against Nebraska Medicine for breach of confidentiality and invasion of privacy, including damages for mental suffering under Neb. Rev. Stat. § 20-203, and hold Accredited and Nebraska Medicine jointly and severally liable on the conspiracy count;

(e) award damages and any other relief under the Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59-1609;

(f) award declaratory and injunctive relief barring the unlawful practices alleged;

(g) award reasonable attorney fees and costs under 15 U.S.C. § 1692k(a)(3) and Neb. Rev. Stat. § 59-1608;

(h) award pre- and post-judgment interest; and

(i) grant such other relief as is just and equitable.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted,

WOODROW R. COX III and KIMBERLY J.
COX, individually and on behalf of all others similarly situated, Plaintiffs,

**THE ORR LAW GROUP, LLC**

By: /s Paul D. Heimann
Paul D. Heimann, #21727
9375 Burt Street, Suite 200
Omaha, Nebraska 68114
Email: paulh@orrlawgrp.com
*Attorney for Plaintiffs and the Proposed Classes*